IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| WILBERT C. JOHNSON | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:11cv446 |
| JOHN RUPERT, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Wilbert Johnson, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights in the Texas Department of Criminal Justice, Correctional Institutions Division. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The active Defendants in the case are Warden John Rupert, Major Jody Hefner, Lt. Christopher Holman, and Sgt. Francis Sweeney.

Johnson's Claims

Johnson complained that in May of 2010, prison officials implemented a practice of strip searching inmates going to and coming from the packing plant where he works. As a result of this policy, Johnson stated that he was often strip searched multiple times a day.

Johnson further complained that a TDCJ policy was modified by Major Hefner, at Warden Rupert's direction, to require inmates to "squat and cough," even though the TDCJ administrative directive on searches contains no mention of such a procedure. He also maintains that no other department besides the packing plant is required to undergo "squat and cough," and that the prisoners are forced to undergo strip searches with females, including staff as well as non-correctional personnel and visitors.

An evidentiary hearing was held, after which the Court dismissed the case as frivolous. On appeal, the Fifth Circuit affirmed in part, but reversed as to Johnson's allegation that he was "routinely, unwillingly and unconstitutionally strip searched and required to squat and cough in the presence of female officers when going to and from work at the Michael Unit packing plant." The Fifth Circuit stated that the Fourth Amendment provided the proper framework in which to analyze this claim, citing *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999).

After the remand, the district court ordered Hefner, Holman, Rupert, and Sweeney to answer the lawsuit. These defendants have filed a motion for summary judgment, to which Johnson filed a response.

## The Report of the Magistrate Judge

After review of the pleadings and the summary judgment evidence, the Magistrate Judge issued a Report recommending that the motion to dismiss be granted and the lawsuit dismissed. The Magistrate Judge observed that in *Moore*, the Fifth Circuit had held that while a prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated, resulting in the loss of those rights which must be sacrificed to legitimate penological needs, searches and seizures of prisoners must still be reasonable under all the facts and circumstances under which they are performed. The district court is to consider the scope of the intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is to be conducted. While prisoners possess a constitutional right to bodily privacy, this right is "minimal at best."

While prison officials have the burden of showing that a search of a prisoner is reasonable, the Fifth Circuit has described this burden as "light." *Waddleton v. Jackson*, 445 Fed.Appx. 808, 2011 WL 5025248 (5th Cir., October 21, 2011).

The Magistrate Judge stated that in Johnson's case, the scope of the intrusion was significant and the manner in which the searches were conducted both weigh in Johnson's favor. However, the prison officials set out an adequate and reasonable justification for the searches, which weighs heavily against Johnson. The summary judgment evidence showed that around May of 2010, prison

2

officials received work of an increased risk of contraband at the packing plant, including the trafficking of drugs, weapons, and cell phone components, and vaseline was discovered at the plant, which can be used to facilitate the concealment of contraband in the rectum. The strip searches and "squat and cough" procedure about which Johnson complains were implemented at that time.

The Magistrate Judge observed that in *Florence v. Board of Chosen Freeholders of the City of Burlington*, 132 S.Ct. 1510, 1517 (2012), the Supreme Court upheld a policy of conducting routine strip searches of persons arrested for minor offenses. In so doing, the Supreme Court emphasized the importance of deference to prison officials unless there is "substantial evidence demonstrating their response to the situation is exaggerated." *Id*. at 1518; *see also Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (upholding policy of routine strip searches of inmates after contact visits, citing the importance of stopping the flow of contraband).

The Magistrate Judge stated that as in *Bell*, the summary judgment evidence in Johnson's case showed that the challenged search policies were directed at combating the flow of contraband. Johnson failed to present substantial evidence showing that the prison officials' response was exaggerated; instead, the Magistrate Judge determined that Johnson presented only conclusory and speculative assertions, which are not sufficient to defeat summary judgment.

Johnson complained that the "squat and cough" procedure was illegal because the prison officials altered the TDCJ Administrative Directive concerning searches, which directive says nothing about a "squat and cough" procedure. Major Hefner stated in his affidavit that the Administrative Directive allowed for visual, manual, or instrument body cavity searches, and the "squat and cough" procedure allows for a visual search that is less intrusive than a manual search. Warden Dewberry stated in his affidavit that the "squat and cough" procedure allows for visual inspection of the rectum by making foreign objects protrude, and he testified under oath at the evidentiary hearing that the order implementing the "squat and cough" procedure was a post order and thus in compliance with the Administrative Directive.

The Magistrate Judge also determined that even if the prison officials violated the Administrative Directive, violations of prison regulations do not themselves amount to constitutional violations. The "squat and cough" procedure is a non-invasive method for locating contraband concealed in the rectum by making it protrude; requiring the inmate to squat and cough does not make the strip search, which involves a visual inspection of the rectum, more intrusive than it already is. In addition, the Magistrate Judge stated that the discovery of vaseline at the packing plant, giving prison officials reason to suspect that prisoners were concealing contraband in their rectums, provided justification for the implementation of the non-invasive "squat and cough" procedure.

Johnson complained that the strip searches were carried out in the presence of female officers and non-correctional personnel. The Magistrate Judge cited Fifth Circuit authority holding that no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of the female guards is required to protect a legitimate governmental interest such as maintaining security. *See, e.g.*, *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002). In *Moore*, by contrast, the female officer actually carried out the search despite the fact that male officers were present who could have done so, a circumstance which Johnson does not allege.

The Magistrate Judge looked to *Waddleton v. Jackson*, 445 Fed.Appx. 808, 2011 5025248 (5th Cir., October 21, 2011), in which the summary judgment evidence showed that the searches complained of by the plaintiff were reasonable and done to promote the safety and security of the staff and inmate population, despite the fact that they were carried out "in a public area in view of females." The Fifth Circuit stated "given that prisoner order and security are legitimate penological interests, the defendants thus met their light burden of proving that the searches were reasonable for Fourth Amendment purposes." Similarly, the summary judgment evidence in the present case showed that the strip searches were reasonable and done to promote safety and security by reducing the flow of contraband. The Magistrate Judge also stated that Johnson failed to show a constitutional violation in the fact that some strip searches may have been conducted in the presence of female non-

4

security personnel, citing Fifth Circuit case law upholding strip searches carried out in the public hallway or in "non-secluded areas."

The Magistrate Judge rejected Johnson's contentions that he was subject to a denial of equal protection because inmates who did not work in the packing plant were not subjected to the "squat and cough" procedure and because female inmates are not subjected to strip searches in the same manner as male inmates. Finally, the Magistrate Judge determined that the Defendants were entitled to qualified immunity.

## Johnson's Objections to the Report

In his objections, Johnson states that Hefner and Dewberry did not present any "documented evidence" with their affidavits concerning the discovery of contraband at the packing plant. He complains that no evidentiary hearing was conducted after the remand from the Fifth Circuit and says that he is still being subjected to "illegal strip searches."

Johnson states that the Administrative Directive says nothing about visual cavity searches, but instead refers to "pat searches." He contends that he cannot obtain declarations from prison officials supporting his contentions out of fear of retaliation. Johnson says that Warden Dewberry and prison officials Eric Rhodes and Ronald Francis would testify that Holman, Rupert, and Hefner implemented the "squat and cough" procedure and that no contraband was ever discovered at the packing plant. However, Johnson offers nothing to substantiate the claim that Warden Dewberry would testify contrary to his affidavit and to his testimony at the evidentiary hearing, nor that Rhodes and Francis would testify in his favor. Similarly, he states that Sgt. Sweeney would testify that he was never told why the strip searches were being conducted and that he, Sweeney, never discovered any contraband at the packing plant. Johnson again offers no indication that Sweeney, a defendant in this case, would testify in the plaintiff's favor; in any event, even assuming Sweeney testified to this effect, Johnson has not shown that such testimony would be relevant. Wardens and majors need not explain the reasons for their orders to lower-level officers, and Sweeney's purported failure to discover contraband at the packing plant does not mean that none was discovered by other officers.

5

After again complaining about being strip searched in the hallways, Johnson states that his witness Willie Beasley was threatened with harm if Beasley filed another grievance, but Beasley filed more grievances anyway. Johnson asserts that a trial is warranted because the Defendants do not qualify for qualified immunity and there are unresolved factual issues.

In a set of supplemental objections, Johnson points to the affidavits which he and Beasley filed. In his affidavit, Johnson states that he has no knowledge of any contraband at the packing plant and that the defendants have not "denied violating my Fourth and Eighth Amendment rights by conducting the illegal strip searches and altering the original Administrative Directive 03.22, which is illegal." Beasley also states that he has no knowledge of contraband being discovered at the packing plant and that the defendants cannot produce written authorization showing that Johnson or any other prisoner was involved in drug trafficking, cell phones, or cell phone components. As the Magistrate Judge stated, these affidavits do not show that Johnson or Beasley have personal knowledge that no contraband was ever discovered at the packing plant. Beasley asserts that witnesses "will offer testimony that will challenge both Dewayne Dewberry and Jody Hefner's truthfulness" with regard to the discovery of contraband, but he fails to identify any such witnesses, much less substantiate that these witnesses will testify in the manner that he claims.

<u>Analysis of the Objections</u>

The sworn affidavits of Hefner and Dewberry, made on personal knowledge, are themselves proper summary judgment evidence. Fed. R. Civ. P. 56(e); *see Wallace v. Texas Tech University*, 80 F.3d 1042, 1047-49 (5th Cir. 1996). The Court was not required to conduct an evidentiary hearing after the remand. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). In view of the legitimate penological interest shown in the competent summary judgment evidence, Johnson has not shown that the strip searches are illegal, even if conducted in the presence of female officers or non-security personnel. *Waddleton*, 445 Fed.Appx. at 809; *Oliver*, 276 F.3d at 745; *see also McCreary v. Richardson*, 738 F.3d 651, 658-59 (5th Cir. 2013).

Johnson's assertion that Administrative Directive 03.22 refers only to pat searches and not strip searches is incorrect. *See* Docket No. 70, Exhibit C (copy of Administrative Directive 03.22). His contention that various prison officials, including one of the named defendants as well as an official who provided an affidavit as summary judgment evidence, as well as other unidentified witnesses would testify in his favor is entirely speculative and unsubstantiated and thus cannot defeat a motion for summary judgment. *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Beasley is not a party to this lawsuit and any alleged violations of his constitutional rights are not part of this lawsuit. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (persons claiming a deprivation of constitutional rights must prove a violation of their personal rights).

With regard to qualified immunity, Johnson offered only a conclusory assertion that "a trial is further warrant[ed] due to the fact that the defendants do not qualify for immunity defense." As the Magistrate Judge stated, once the defendants properly invoke qualified immunity, the burden shifts to the plaintiff to rebut the applicability of the defense. *Tolan v. Cotton*, 713 F.3d 299, 304). To do this, the plaintiff show that the official's conduct violated a constitutional or statutory right and that the official's actions constituted objectively unreasonable conduct in light of clearly established law at the time of the conduct in question. *Id.* This means that when a defendant moves for qualified immunity, the plaintiff must show that all reasonable officials, similarly situated, would have known that the alleged acts of the defendant violated the Constitution. *Tamez v. Manthey*, 589 F.3d 764, 770 n.2 (5th Cir. 2009). Conclusory allegations cannot overcome the qualified immunity defense. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994); *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997).

Here, the law in effect in May of 2010 permitted strip searches which were reasonable under all of the facts and circumstances in which they are performed. The summary judgment evidence showed that the prison officials had adequate justification for ordering these searches.

The law in effect at that time also permitted strip searches to be conducted in non-secluded areas of the prison and in the vicinity of female officers when the presence of those officers is

required to protect a legitimate governmental interest such as the maintenance of security. Johnson does not allege that the female officers actually conduct the strip searches, but only that these searches are conducted in their presence. The fact that strip searches are conducted in the vicinity of female officers, who are present to provide security, was not a violation of the law in effect at that time. *See Waddleton*, 445 Fed.Appx. at 809; *Oliver*, 276 F.3d at 745.

In his "motion to defer summary judgment," Johnson states that "there are 20 other male officers in close proximity (within 100 yards)," by which he claims that the searches need not be done in front of female officers. This is not a claim that the female officers were not present to provide security, but that the prison could have shuffled its personnel in order to avoid having the female officers present. Even were Johnson's claim construed as an assertion that the female guards were not present to provide security, he raises it for the first time in this motion to defer summary judgment; the Fifth Circuit has held that claims raised for the first time in response to a motion for summary judgment are not properly before the court. *Cutrera v. Bd. of Supervisors of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005).

TDCJ-CID Administrative Directive 03.22, section II.B (May 8, 2006 revision) provided that "if, under ordinary circumstances, a female officer is present in the vicinity of a male offender being strip searched, the female officer's duty is solely to provide security for the searching officer. The female officer shall not actively participate in the strip search." This policy comports with the law existing at that time. Johnson does not allege, and the summary judgment evidence does not show, any violations of the policy's requirements. He has failed to show all reasonable prison officials would know that the actions of the Defendants violated the Constitution, and thus has not overcome the qualified immunity defense. His objections are without merit.

Johnson has also filed a motion asserting that the Defendants' actions are in violation of the Prison Rape Elimination Act, 42 U.S.C. §15601 *et seq.*, and requesting a stay of proceedings so as to give him a chance to amend his complaint to incorporate these claims. The courts have held that nothing in the Prison Rape Elimination Act suggests that Congress intended to create a private right

8

of action for inmates to sue prison officials for noncompliance with the Act. *De'lonta v. Clarke*, civil action no 7:11cv483, 2012 WL 4458648 (W.D.Va., September 11, 2012) (collecting cases), *aff'd* 548 Fed.Appx. 938 (4th Cir., December 23, 2013). Rather, the Act was intended to address the problem of rape in prison, authorize grant money, and create a commission to study the issue; it does not give prisoners any specific rights. *Chinnici v. Edwards*, civil action no. 1:07cv229, 2008 WL 3851294 (D.Vt., August 13, 2008). Because Johnson's proposed amendment is entirely futile, staying the proceeding to permit the amendment would serve no purpose. *See Johnson v. Teva Pharmaceuticals USA Inc.*, 758 F.3d 605, 610 (5th Cir. 2014) (no abuse of discretion in denying leave to amend if amendment would be futile).

## Conclusion

The Court has conducted a careful *de novo* review of the pleadings and summary judgment evidence in this case as well as the Report of the Magistrate Judge and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 89) is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendants' motion for summary judgment (docket no. 34) is hereby GRANTED and the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**So ORDERED and SIGNED this 9th day of December, 2014.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**